# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2539 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 45, 49 |
| | : | | |
| R&R JANITORIAL, PAINTING, AND BUILDING SERVICES, INC. d/b/a R&R BUILDING SERVICES, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING THE EEOC'S MOTION FOR LEAVE TO FILE A SUR-REPLY; DENYING R&R'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This action arises under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 and is brought by the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") against R&R Janitorial, Painting, and Building Services, Inc. d/b/a R&R Building Services, Inc. ("R&R" or "Defendant") in connection with R&R's reduction in force ("RIF") on April 27, 2018. R&R, a Hispanic-owned janitorial services company based in Washington, D.C., faced a significant budget cut to its U.S. Department of State ("DOS") contract in early 2018, prompting a RIF that led to the layoff of 17 employees. R&R, emphasizing its Historically Underutilized Business Zone ("HUBZone") status and union compliance, contends that they selected employees for termination based on seniority and security clearance in line with its federal contract and collective bargaining agreements ("CBAs"). The EEOC argues that the layoffs constituted race and national origin discrimination because all of the employees selected

for termination were Hispanic employees of Central American origin.  The EEOC also argues that the reasons R&R has provided for its RIF decision-making are pretextual as evidenced by its contention that more senior and qualified Hispanic workers were let go in favor of less qualified, non-Hispanic employees.  R&R denies the claims, asserting that the layoff process was objective, well documented, and approved by the Union.  For the foregoing reasons, the Court grants the EEOC's motion for leave to file a surreply and denies R&R's motion for summary judgment.

## II.  EEOC'S MOTION FOR LEAVE TO FILE A SUR-REPLY

After R&R filed its motion for summary judgment on September 3, 2024, *see* Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 45, the EEOC filed a memorandum in opposition on December 6, 2024, *see* EEOC's Mem. of L. in Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 47, and R&R filed a reply to the opposition on January 31, 2025, *see* Mem. of P. & A. in Reply to Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Def.'s Reply"), ECF No. 48.  Although this should have closed the briefing on the motion for summary judgment, the EEOC filed a motion for leave to file a surreply, *see* Pl. EEOC's Mot. for Leave to File Sur-Reply Mem. ("Pl.'s Mot."), ECF No. 49.  In that motion, the EEOC alleges that R&R raised new arguments in its reply brief, specifically challenging the validity of the EEOC's separate Statement of Facts and requesting that the court disregard it because it allegedly violates Local Civil Rule 7(h).  Pl.'s Mot. at 1–2.  Because the EEOC argues that these points were raised for the first time in R&R's reply, it requests a chance to respond and ensure its factual assertions are not dismissed without due process.  *Id.* at 2–3.  Additionally, the EEOC asserts that R&R's position that this Court should disregard the EEOC's Statement of Facts introduces a new issue comparable to a motion to strike, warranting that the EEOC be given an opportunity to reply in the interest of a fair and

thorough briefing process.  Reply to Pl. EEOC's Mot. for Leave to File Sur-Reply Mem. ("Pl.'s Reply") at 1–2, ECF No. 51.

In its response to the EEOC's motion for leave to file a surreply, R&R argues that it opposes EEOC's motion for leave to file a surreply on the grounds that the alleged "new" argument—challenging the procedural validity of the EEOC's separate Statement of Facts—was a direct response to the EEOC's unconventional filing and falls within the scope of issues already raised.  Mem. P. & A. in Opp'n to Pl.'s Mot. for Leave to File Sur-Reply Mem. ("Def.'s Opp'n") at 3–4, ECF No. 50.  R&R also argues that a surreply would be procedurally improper, unhelpful to the Court, and prejudicial, as it would give the EEOC an unfair opportunity to get the last word without allowing R&R to respond.  *Id.* at 4–5.

The Court has broad discretion in deciding whether to allow or deny a request to file a surreply.  *See Am. Forest & Paper Ass'n, Inc. v. EPA*, No. 93-cv-0694, 1996 WL 509601, at *3 (D.D.C. Sep. 4, 1996).  "[W]hen [a] non-movant is deprived of the opportunity to contest [issues] raised for the first time in the movant's reply, the non-movant may seek the [] court's leave to file a surreply."  *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011) (citing *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003)).  "In exercising its discretion, the [Court] . . . consider[s] whether the movant's reply in fact raises arguments or issues for the first time[,] whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion[,] and whether the movant would be unduly prejudiced were leave to be granted."  *Id.* (citing *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3–4 (D.D.C. 2011)).  The Court finds that the EEOC has shown good cause for granting its motion by sufficiently demonstrating that R&R's argument in its reply brief—that the EEOC failed to meet the requirements of Local Civil Rule 7(h) with its separate Statement of Facts—merits giving the EEOC an opportunity to

respond to the arguments raised for the first time in R&R's reply brief.  *See Alexander v. FBI*, 186 F.R.D. 71, 74 (D.D.C. 1998); Pl.'s Mot. at 1–3.  "That question bears directly on the Court's summary judgment analysis, and, as a result, it will grant Plaintiff[]'s [m]otion and will consider" the EEOC's arguments concerning its separate Statement of Facts.  *See Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2024).  But the EEOC has already addressed the issue concerning its separate Statement of Facts in its motion to file a surreply and R&R has responded thereto. Thus, an additional filing is unnecessary, and the Court will deem the arguments raised by the EEOC in its motion as its surreply.  Accordingly, the Court grants the EEOC's motion to file a surreply and it shall consider the arguments raised in the EEOC's motion to file a surreply concerning the EEOC's separate Statement of Facts and R&R's response thereto.

### III.  EEOC'S STATEMENT OF FACTS

After considering the arguments raised in the EEOC's motion for leave to file a surreply regarding the procedural validity of its separate Statement of Facts and R&R's response thereto, the Court must independently determine whether it will consider the EEOC's Statement of Facts in its analysis of the summary judgment briefing.  The EEOC submitted a 40-page, 200-paragraph "Statement of Facts in Opposition to Defendant's Motion for Summary Judgment," *see* EEOC's Statement of Facts Opp'n Def.'s Mot. Summ. J. ("Pl.'s SOF"), ECF No. 47-1, which R&R argues violates Local Rule 7(h) by going beyond a permitted concise statement of genuine issues.  *See* Def.'s Reply at 6–7.  Additionally, the EEOC also submitted a 44-page, 100-paragraph "Opposition to Defendant's Statement of Facts" and over 4,000 pages of exhibits containing declarations, deposition excerpts, and other related correspondence.  *See generally* Pl.'s Opp'n.  R&R claims that this submission includes many immaterial, duplicative, or uncited "facts" that obscure the record, and therefore asks the Court to disregard it without responding to

each individual assertion.  Def.'s Reply at 6–7.  The EEOC argues that it fully complied with Local Rule 7(h) and relevant case law by submitting both a response to R&R's Statement of Undisputed Facts and its own detailed Statement of Facts in opposition to summary judgment, citing extensive evidence that it claims that R&R overlooked.  Pl.'s Mot. at 1–3.  The EEOC contends that R&R's request to strike this submission is improper and would unjustly limit the EEOC's ability to present material facts showing genuine issues for trial.  *Id.*

Pursuant to Local Civil Rule 7(h), a party responding to the opposing party's motion for summary judgment is required to submit concise factual statements including references to parts of the record relied upon to support the statements.  LCvR 7(h).  The Rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (internal citations omitted).[1]  "[A] district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and other interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact."  *Id.* (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).  Where a party has failed to file a proper Rule 7(h) statement, it " 'may not be heard to complain that the district court has abused its discretion by failing to compensate for [his] inadequate effort.'"  *Id.* (quoting *Twist*, 854 F.2d at 1425).

This Court has previously held that, although lengthy, sixty-two pages of Statement of Facts still substantially complied with Local Civil Rule 7(h) and that "there [was] no basis for striking the [non-moving party]'s Statement and Response to Defendant's Statement."  *SEC v.*

---

[1] This opinion discusses Local Civil Rule 108(h), which is Local Civil Rule 7(h)'s predecessor.  *See also Robinson v. D.C.*, 130 F. Supp. 3d 180, 187 (D.D.C. 2015) (citing to *Jackson*, 101 F.3d at 150–51).

*Grendys*, 840 F. Supp. 2d. 36, 39 (D.D.C. 2012).  Here, despite R&R's objections, the Court will apply the same logic and will consider the EEOC's separate Statement of Facts in its summary judgment analysis.  First, "[g]iven the complicated factual history of the case, the Court does not find the length [of the Statement of Facts] to be an independent basis for striking the Statement." *Id.* at 39.  The EEOC's Statement of Facts, which is 20 pages shorter than the Statement of Facts in *Grendys*, will be used to "crystallize for the [Court] the material facts," *see Jackson*, 101 F.3d at 151, and to identify clearly "genuine issue[s] of material disputed fact," *see Twist*, 854 F.2d at 1425.  Many of the facts in the Statement raise a genuine issue regarding whether discriminatory motivations contributed to the manner in which R&R conducted its RIF, which is the central issue in this case.

R&R asserts that "many of the EEOC's 'facts' are not material" because "73 of the 200 paragraphs are not even cited in the EEOC's [opposition brief]."  *See* Def.'s Reply at 7.  Accordingly, R&R argues that the EEOC is "attempting to simply cloud the record on summary judgment."  *Id.*  The Court disagrees.  It is unclear how R&R could reference the record to support the claim that a particular fact is "immaterial," and the Court does not find it necessary for R&R to cite specific records in support of its argument.  *See Grendys*, 840 F. Supp. 2d at 39.  The mere fact that R&R disagrees with the EEOC's interpretation of certain portions of the record is not unusual, nor does it imply that the EEOC's assertions are incorrect.  As the Court has noted, "[a] dispute regarding the interpretation of a witness's testimony is a matter for the trier of fact, not the basis for a motion to strike."  *Id.*

Furthermore, R&R claims that "the EEOC's Statement of Facts in Opposition to Defendant's Motion for Summary Judgment is largely duplicative of Defendant's Statement of Undisputed Material Facts," and that it "reflect[s] the EEOC's mere haggles with Defendant's

phraseology rather than actual disputes over the record." *See* Def.'s Reply at 7. However, the Court does not fault the EEOC for providing contextual information that does not contradict the underlying facts, especially when, in many cases, the EEOC claims that R&R's "facts" are exaggerated or include value judgments with which the EEOC disagrees. *See Grendys*, 840 F. Supp. 2d at 39. R&R's claim that the EEOC's response fails to contradict the proffered facts is simply incorrect. In fact, the EEOC's Opposition to Defendant's Statement of Facts clearly outlines whether it disputes each paragraph from R&R's Statement of Facts, whether in full or in part. *See generally* EEOC's Opp'n to Def.'s Statement of Facts ("Pl.'s Opp'n to Def.'s SOF"), ECF No. 47-2.

The Court in *Grendys*—although it found that the non-moving party's submission was lengthy and contained some instances of cross-referencing instead of direct citations to the record—held that those issues did not impede the Court's ability to discern the basis for the party's responses. 840 F. Supp. 2d at 39. The Court concludes the same here. Here, the EEOC's claims about immaterial facts or disputed interpretations are considered reasonable and appropriate for the trier of fact, and the Court finds that disagreements over the interpretation of the evidence or the presentation of facts are not grounds to disregard or strike the Statement of Facts. Because there are over 4,000 pages of evidence submitted along with the EEOC's opposition, "if a 'fact' is not a fact, or is immaterial to the case at hand, the Court will simply ignore it." *Id.* at 40. To the extent that R&R claims that certain facts are irrelevant to its motion's resolution, it has already made that argument in its summary judgment pleadings. Therefore, the Court finds that the EEOC has complied with Local Civil Rule 7(h), and there is no reason to disregard or strike its Statement or its Response to R&R's Statement. Accordingly,

the Court will consider the EEOC's separate Statement of Facts in resolving R&R's motion for summary judgment.

## IV.  FACTUAL BACKGROUND

R&R is a Hispanic-owned and operated small business serving Washington, D.C. with janitorial and building maintenance services for federal, local, and commercial entities.  *See* Def.'s Statement of Undisputed Material Facts ("Def.'s SOF") ¶¶ 1–2, ECF No. 45-2.  R&R was founded in 1994 by Jose Reyes, a Washington, D.C. native born to Dominican and Ecuadorian immigrant parents.  *Id.* ¶¶ 4, 7–8.  Between 2013 and 2018, R&R was certified as a HUBZone business, a designation that requires a business to be owned by U.S. citizens, have its principal office in a historically underutilized business zone, and employ at least 35% of its workforce from such areas.  *Id.* ¶ 3.  R&R emphasized its HUBZone status as part of its mission to support under-resourced D.C. neighborhoods.  *Id.*; Mem. P. & A. in Supp. Def.'s Mot. Summ. J. ("Def.'s Mot. Mem.") at 2, ECF No. 45-1.  R&R maintains equal employment opportunity policies and asserts that it complies with all federal contractor requirements, including the prohibition of discrimination based on race, national origin, or other protected characteristics.  Def.'s SOF ¶¶ 30–31.  R&R's workforce is unionized under multiple CBAs, all of which include provisions prohibiting discrimination.  *Id.* ¶¶ 11–12, 31.  At the time of its first contract with DOS, about 70% of R&R's workforce was Hispanic.  *Id.* ¶ 27.

In 2013, R&R was awarded a contract by the DOS to perform maintenance services at the Harry S. Truman Building ("HST") and Blair House.  *Id.* ¶¶ 19–22.  The HST houses senior government officials and diplomatic functions, while Blair House serves as a temporary residence for visiting foreign dignitaries.  *Id.* ¶¶ 21–22.  Due to the sensitive nature of these facilities, the DOS contract required that specific areas be serviced by personnel with Top Secret

("TS") security clearance.  *Id.* ¶¶ 33, 35.  R&R interpreted the contract to mandate that it

maintain at least 25 employees with the required clearances.[2]  *Id.* ¶ 34.  By 2018, R&R had

approximately 96 employees working under the DOS contract, with around 60% identifying as

Hispanic.  *Id.* ¶¶ 28–29.  In early 2018, the DOS informed R&R that the contract budget would

be reduced by approximately 40%, prompting R&R to consider a RIF.  *Id.* ¶¶ 48–49.  Reyes and

R&R Vice President Larry Westfall concluded that layoffs were necessary.  *Id.* ¶¶ 9, 49, 59, 63.

Initially, they estimated thirty positions would be impacted—twenty from the day shift and ten

from the night shift.  *Id.* ¶ 49.  R&R engaged in negotiations with the DOS regarding the scope

of work and attempted to minimize the number of layoffs.  *Id.* ¶¶ 51–52.  R&R also consulted the

Union, proposing a reduction in employee hours to avoid some layoffs, but the Union rejected

this proposal.  *Id.* ¶¶ 52–54.  Ultimately, the RIF resulted in the elimination of twelve day shift

positions and five night shift positions.  *Id.* ¶¶ 55–56, 59–71.

　　In executing the RIF, R&R argues that it used Union seniority and security clearance

status as criteria for layoff selection, in accordance with the DOS contract and applicable CBA.

*Id.* ¶¶ 68, 72–73.  R&R asserts that it identified the least senior employees without the necessary

clearance from both the day and night shifts.  *Id.* ¶¶ 69, 71.  Additionally, R&R asserts that two

---

[2] The EEOC argues that R&R was not required to retain 25 janitors with TS clearance under the DOS contract and that R&R's later reliance on this rationale is post-hoc and indicative of pretext.  *See* Pl.'s SOF ¶¶ 94–96; *Vasser v. Shulkin*, 280 F. Supp. 3d 9, 20 (D.D.C. 2017). R&R contends that the contract required that "the # of TS Cleared Contract employees combined with the # of Contract employee packages that have been submitted to DSS MUST be equal to or greater than a count of 25 Contractor employees at ALL times," and that its understanding of this provision was reasonable.  *See* Ex. 1 to Reyes July 19, 2023 Dep. ("Reyes Dep. I") at RR00383, ECF No. 47-4; Def.'s SOF ¶ 34.  The Court agrees with R&R and its interpretation of the contract, finding that the DOS contract's plain language required maintaining a clearance threshold, and that any misunderstanding by R&R's non-lawyer managers is not evidence of discrimination.  *See* Reyes Dep. I at 70–73; Westfall Dep. at 25–29, ECF No. 47-5; *Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 82 (D.D.C. 2024).

night shift employees were retained due to their qualifications in operating specialized floor maintenance equipment. *Id*. ¶¶ 69, 72. R&R shared the list of affected employees with the Union, which did not object to the layoffs or the selection criteria used. *Id*. ¶¶ 56, 73–74. The layoffs were formally announced to the employees on April 27, 2018. *Id*. ¶ 79. Following the RIF, R&R began recalling employees based on seniority as permitted by the CBA. *Id*. ¶¶ 82–83. Some employees accepted offers for part-time or call-in positions, while others declined due to alternative employment. *Id*. ¶¶ 82–84. According to the record, most of the affected employees were eventually offered opportunities to return to work.

The EEOC challenges the RIF, noting that all of the 17[3] employees terminated from the HST on April 27, 2018 were Hispanic and of Central American origin. Pl.'s Opp'n at 1. The EEOC asserts that the reasons given for the terminations—seniority and security clearance—are pretextual and were applied in a discriminatory manner. *Id.* Specifically, the EEOC alleges that Hispanic janitors with more seniority and qualifications were terminated while less senior, non-Hispanic workers without required clearances were retained. *Id.* In support of its claim that R&R harbored discriminatory animus, the EEOC also cites testimony suggesting that RIF decisionmakers expressed concerns about the number of Hispanic workers in D.C. and their frustrations about Hispanic workers replacing Black workers. *See* Pl.'s SOF ¶¶ 12–14, 18–19, 156–161, 171, ECF No. 47-1.

R&R characterizes the EEOC's claims of racial discrimination as unsupported by evidence. R&R claims that discovery revealed no testimony from the claimants indicating

---

[3] Although the EEOC argues that "Defendant terminated 16 janitors," *see* Pl.'s Opp'n at 1, Defendant alleges that there were 17 janitors terminated, *see, e.g.*, Bernard R. Hackett Decl. ¶ 9, ECF No. 45-9 ("On May 2, 2018, I met with the 17 workers impacted by the Layoff."). The difference of a single employee is immaterial to the Court's analysis, but the Court will proceed on the basis of R&R's representation for the sake of consistency.

personal knowledge of the layoff criteria or discriminatory behavior from Reyes or Westfall. Def.'s Mot. at 5; *see also* Def.'s SOF ¶ 77. R&R further asserts that decisions regarding layoffs adhered to the guidelines in its federal contract and union agreements, *see* Def.'s SOF ¶¶ 3, 48–49, 50, 52, 55–56; *see also* Pl.'s SOF ¶¶ 3, 48–49, 50, 52, 55–56, and that its criteria and final layoff list were accepted by the Union without objection. Def.'s SOF ¶¶ 56, 73–74.

## V. LEGAL STANDARD

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Anderson*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 849–50 (D.C. Cir. 2006) (same); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) (finding that when considering a motion for summary judgment, the court must view facts "in the light most favorable to the nonmoving party"). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, deposition testimony, or other competent evidence, setting

forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party is required to provide evidence that would permit a reasonable jury to find in his favor.  *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50 (citations omitted); *see Scott v. Harris*, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).  To defeat a properly supported motion for summary judgment, then, the non-moving party must have more than "a scintilla of evidence to support his claims."  *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001).

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009) (internal quotation marks omitted), pursuant to Rule 56, "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" *id.* (quoting Fed. R. Civ. P. 56).  "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *see also Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record.").  The plaintiff "must support [their] allegations . . . with facts in the record; a mere

unsubstantiated allegation . . . creates no 'genuine issue of fact' and will not withstand summary judgment." *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993), *abrogated on other grounds by*, *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) (quoting *Celotex*, 477 U.S. at 322–23). On summary judgment, the Court views all evidence "in the light most favorable to the nonmoving party and the [C]ourt [] draw[s] all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial" because the case turns on material disputes of fact that could be "resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## VI. ANALYSIS

For the remaining arguments in its motion for summary judgment that the Court will address, R&R contends that there is no direct evidence of unlawful discrimination based on race or national origin. Additionally, R&R argues that the record lacks sufficient evidence to create a genuine dispute regarding whether its reasons for the RIF are pretextual.[4] Specifically, R&R asserts that its use of seniority and security clearances was non-discriminatory and non-pretextual, and that its explanations for the RIF are consistent. *See* Def.'s Reply at 9–13. Accordingly, the Court addresses each of the EEOC's claims with respect to these arguments to assess whether a genuine dispute of material fact exists and whether R&R is entitled to summary judgment.

---

[4] Although the EEOC's opposition brief merely lists out facts—many of them unsupported by the record—without any supporting argument or case citation, "a motion for summary judgment cannot be 'conceded' for want of opposition," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), and the "Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment,'" *id.* (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015)).

### A.  Title VII

Under Title VII of the Civil Rights Act, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e–2(a)(1)).  An employee may establish disparate treatment under Title VII by demonstrating that their employer "has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)).  To establish a claim under Title VII, a plaintiff must demonstrate two key elements: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady*, 520 F.3d at 493.  Title VII's protections extend equally to both minority and non-minority workers. *Mastro*, 447 F.3d at 850.

At the summary judgment stage, courts evaluate Title VII claims differently depending on the nature of the evidence.  When a plaintiff presents direct evidence of discrimination, the case generally proceeds to a jury trial. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576–77 (D.C. Cir. 2013).  But where only circumstantial evidence is available, the Court applies the three-step, burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  First, the plaintiff must make out a prima facie case of discrimination by a preponderance of the evidence. *Id*. at 802.  This requires showing that: the plaintiff (1) is a member of a protected class; (2) suffered adverse employment action; and (3) was treated differently from similarly situated employees outside the protected class. *See, e.g.*, *Nichols v. Billington*, 402 F. Supp. 2d 48, 65 (D.D.C. 2005), *aff'd*, No. 05-cv-5326, 2006 WL 3018044

(D.C. Cir. Mar. 7, 2006); *see also Augustus v. Locke*, 934 F. Supp. 2d 220, 230 (D.D.C. 2013) (same). If the plaintiff meets this initial burden, the employer must respond with "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka*, 156 F.3d at 1289 (internal quotation marks and citations omitted). If the employer does so, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Although the *McDonnell Douglas* framework serves as a guide, courts in this Circuit adopt a streamlined approach once the employer has articulated a non-discriminatory reason for the employment action. *Brady*, 520 F.3d at 494. At that point, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id*. Put simply, the inquiry becomes whether the plaintiff has shown that the employer's stated reasons were pretextual. Here, that means that the EEOC must show that R&R's stated reasons for the RIF—namely, financial budget cuts and the use of security clearance and seniority to determine necessary reductions—are a pretext for unlawful action.

The EEOC contends that the record includes both direct and circumstantial evidence indicating that R&R's decision to lay off 17 Hispanic employees of Central American origin during a 2018 RIF was driven by unlawful discrimination based on race and national origin. Applying the legal framework outlined above, the Court must assess: (1) whether the EEOC has submitted direct evidence of discrimination; and (2) if not, whether the circumstantial evidence is

sufficient to permit a reasonable jury to find that discriminatory intent motivated R&R's actions. *See Mastro*, 447 F.3d at 851–52, 855.  The Court finds that, although the EEOC has not presented direct evidence of discrimination, it has produced circumstantial evidence from which a reasonable jury could infer that R&R's stated reasons for the layoffs were a pretext for unlawful discrimination.  Accordingly, R&R's motion for summary judgment is denied.

### 1.  Direct Evidence

The Court first considers the EEOC's argument that it has produced direct evidence of unlawful discrimination.  Direct evidence, if present, permits a plaintiff to bypass the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and proceed directly to trial.  *See Ayissi-Etoh*, 712 F.3d at 576–77; *Francis v. Perez,* 970 F. Supp. 2d 48, 62 (D.D.C. 2013).  This is because direct evidence consists of statements or conduct that, on their face, reflect discriminatory animus without requiring inference or presumption.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121–22 (1985); *Ayissi-Etoh*, 712 F.3d at 576–77; *Lane v. Vasquez*, 961 F. Supp. 2d 55, 75 (D.D.C. 2013).

However, courts have consistently emphasized that not all discriminatory comments qualify as direct evidence.  For such remarks to constitute direct evidence, they must be (1) made by a decisionmaker; and (2) tied temporally and contextually to the challenged employment action.  *See Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1518 n.9 (11th Cir. 1990); *Francis*, 970 F. Supp. 2d at 62.  Statements made by non-decisionmakers or disconnected from the adverse action do not meet this threshold.  *See Spaeth v. Georgetown Univ.*, 943 F. Supp. 2d 198, 206 (D.D.C. 2013) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); *Singleton v. Potter*, 402 F. Supp. 2d 12, 26 (D.D.C. 2005).

Here, the EEOC relies primarily on remarks allegedly made by two individuals: Larry Westfall and R&R's Project Manager at DOS during the relevant time period, Joyce Alston. According to the EEOC, Westfall made a comment to the effect that "Hispanics are taking over the D.C. area and they are taking jobs away from blacks," while Alston is alleged to have rebuked Hispanic employees for speaking Spanish, making remarks such as "this is America." Pl.'s SOF ¶¶ 12–14, 18–19, 156–161, 171. Although such remarks are inappropriate and could reflect a discriminatory atmosphere, they do not, standing alone, constitute direct evidence unless shown to be causally connected to R&R's RIF decisions.

In *Wilson v. Cox*, the court held that a single statement could constitute direct evidence— but only when made by the decisionmaker in the context of explaining the challenged employment decision. 753 F.3d 244, 247–48 (D.C. Cir. 2014). Unlike *Wilson*, where the discriminatory statement was contemporaneous with and causally tied to the adverse action, here, the record demonstrates that Westfall's statement was made at a company Christmas party in December 2017, several months before the DOS directed R&R to reduce staffing, and unrelated to the implementation of the RIF. *See* Edwards Dep. at 25–30, 113–14, Ex. T to Pl.'s Opp'n; Davis Dep. at 79–80, Ex. U to Pl.'s Opp'n. This temporal disconnect prevents this statement from being considered direct evidence. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994) (remarks made months before the employment decision insufficient); *Simms v. U.S. Gov't Printing Off.*, 87 F. Supp. 2d 7, 9 n.2 (D.D.C. 2000) (same).

As to Alston, the undisputed facts show that she did not participate in deciding which employees would be terminated. *See* Def.'s SOF ¶¶ 25, 59–63. The actual decision-makers— Westfall and Reyes—determined which positions to eliminate based on RIF criteria and then tasked Alston to identify the corresponding employees. Westfall Dep. at 29:21–31:4, Ex. B to

Pl.'s Opp'n; Alston Dep. at 190:2–14, Ex. V to Pl.'s Opp'n.  Her function was clerical and

administrative, not substantive.  Alston Dep., at 192:15–193:8.  Courts have routinely held that

statements made by individuals without decision-making authority cannot constitute direct

evidence, even if those individuals held supervisory positions.  *See Francis*, 970 F. Supp. 2d at

65 (holding that statements of a supervisor could not be direct evidence because they were

unrelated to the adverse employment decision-making process); *Sewell v. Chao*, 532 F. Supp. 2d

126, 138 n.8 (D.D.C. 2008), *aff'd sub nom.*, *Sewell v. Hugler*, No. 08-cv-5079, 2009 WL 585660

(D.C. Cir. Feb. 25, 2009); *see also Hampton v. Vilsack*, 760 F. Supp. 2d 38, 51 (D.D.C. 2011),

*aff'd*, 685 F.3d 1096 (D.C. Cir. 2012) (same).

The EEOC argues that Alston "worked together" with Westfall and Reyes and thus

should be treated as part of the decision-making process.  Pl.'s Opp'n at 7, 9–10.  But mere

proximity to decisionmakers does not establish decision-making authority.  *See Harris v.

Wackenhut Servs., Inc.*, 590 F. Supp. 2d 54 (D.D.C. 2008), *amended by*, 648 F. Supp. 2d 53, 62–

63 & n.6 (D.D.C. 2009), *aff'd*, 419 F. App'x 1 (D.C. Cir. 2011) (finding that discriminatory

statements made by non-decisionmakers could not be inferred to have influenced the adverse

employment action despite the non-decisionmakers being frequent companions of the

decisionmakers).  Courts have consistently rejected attempts to bootstrap liability onto

individuals who had no input into the adverse action itself.  *See Spaeth*, 943 F. Supp. 2d at 206

("Direct evidence does not include . . . 'statements by nondecisionmakers[.]'" (quoting *Price*,

490 U.S. at 277 (1989) (O'Connor, J., concurring))); *Singleton*, 402 F. Supp. 2d at 26 (holding

that a supervisor's words cannot support a claim because the supervisor was not in that position

when the challenged employment action occurred).  Alston was not responsible for developing

the RIF criteria, determining how many positions to eliminate, or selecting specific individuals to be laid off.  *See* Def.'s SOF ¶¶ 25, 59–63.

Furthermore, there is no evidence that either Westfall's or Alston's remarks were made in the course of explaining or justifying R&R's RIF decisions.  In fact, the comments cited were isolated, temporally remote, and made outside the context of the RIF entirely.  For example, claimant Lilian Gonzalez testified that Alston told her to "go back to [her] country," but admitted she did not know when the comment was made and acknowledged that the reason R&R gave her for her termination was a government-mandated reduction in force.  *See* Gonzalez Dep. at 92:3–93:10, Ex. F to Pl.'s Opp'n (generalizing that Alston made this statement "almost every day"); *see also id.* at 30:4–18 (identifying that Alston was laughing but not making discriminatory remarks when the termination letters were distributed); Def.'s SOF ¶ 78.  Other employees reported being told not to speak Spanish, yet uniformly acknowledged that they were informed that budget cuts were the reason for their termination.  Def.'s SOF ¶¶ 77–78.

In sum, the EEOC has not presented direct evidence that satisfies the controlling legal standard.  Neither Alston nor Westfall made the allegedly discriminatory statements in the context of executing the 2018 RIF, and Alston was not involved in the termination decisions.  Without evidence directly tying those alleged remarks to the adverse employment action, the comments cited constitute, at most, stray remarks.  Accordingly, the EEOC's claim fails at the direct evidence stage and must proceed, if at all, under the circumstantial evidence analysis established by *McDonnell Douglas* and refined in *Brady*.

## 2.  Circumstantial Evidence

Having rejected the EEOC's argument based on purported direct evidence of unlawful discrimination, the Court now applies the *Brady* framework to assess the circumstantial evidence

presented.  R&R contends that, even assuming that the EEOC has established a prima facie case of discrimination, R&R had a legitimate, non-discriminatory reason for its RIF decisions and the EEOC presents no evidence that R&R's reasons were merely a pretext for intentional race or national origin discrimination.  Def.'s Mot. Mem. at 12.

Because R&R has proffered a non-discriminatory explanation for its RIF decisions (i.e., an economically required RIF that was effected through the application of non-discriminatory, objective criteria), the Court concludes that the "one central inquiry" at the summary judgment stage is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (citing *Brady*, 520 F.3d at 493–95).  In resolving this issue, courts are to assess "all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'"  *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C. Cir. 2002)).  Because, in suitable circumstances, a "factfinder's disbelief of the reasons put forward by the defendant" may support an inference of intentional discrimination, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993), a Title VII plaintiff "is not typically required 'to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment.'"  *Markowicz v. Nielsen*, 316 F. Supp. 3d 178, 191 (D.D.C. 2018) (quoting *Aka*, 156 F.3d at 1290).

A plaintiff can demonstrate that an employer's stated justification for an adverse employment action is a pretext for unlawful discrimination in several ways. As the D.C. Circuit explained in *Allen v. Johnson*, "common ways of proving invidious motive . . . include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is 'lying about the underlying facts' of its decision; that there were 'changes and inconsistencies' in the employer's given reasons for the decision; that the employer failed to 'follow established procedures or criteria'; or that the employer's 'general treatment of minority employees' . . . was worse than its treatment of non-minorities." 795 F.3d 34, 40 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 495 & n.3).

### a. R&R's Financial Justification for the RIF

R&R's decision to implement a RIF was driven by a legitimate, nondiscriminatory reason: budget cuts mandated by the DOS, which required R&R to reduce contract costs by approximately 40%. *See* Def.'s SOF ¶ 48. Courts afford substantial deference to such employer decisions, so long as they are not pretexts for discrimination. *See DeJesus v. WP Co.*, 841 F.3d 527, 534 (D.C. Cir. 2016); *Davis v. District of Columbia*, 925 F.3d 1240, 1252 (D.C. Cir. 2019).

Initially, R&R anticipated eliminating twenty full-time day shift and ten part-time night shift positions. *See* Def.'s SOF ¶ 49. However, after further negotiations with DOS regarding the budget and scope of work, the company reduced the number of affected positions. *Id.* ¶¶ 51–52. R&R consulted with the Union to finalize the list of impacted employees. *Id.* ¶¶ 52–56. The company also proposed reducing employee hours to avoid layoffs, but the Union declined this approach. *Id.* ¶¶ 53–54. Ultimately, twelve full-time day shift and five part-time night shift positions were cut to comply with the revised contract obligations. *Id.* ¶¶ 55–56, 59–72.

The consistency of employee testimony further supports the legitimacy of R&R's justification. Multiple employees confirmed they were told the layoff was due to government cutbacks, lack of work, or a reduction in funding. *See, e.g.*, Amaya Dep. at 31–32, Ex. G to Def.'s Mot.; Gonzalez Dep. at 36:8–23, Ex. J to Def.'s Mot.; B. Guardado Dep. at 80:1–4, Ex. K to Def.'s Mot.; Lopez Dep. at 100:8–16, Ex. N to Def.'s Mot.; Maltez Dep. at 61:3–7, Ex. O to Def.'s Mot.; Guevara Dep. at 117:18–21, Ex. M to Def.'s Mot.; Ulloa Dep. at 98–101, Ex. R to Def.'s Mot. In contrast to cases where courts found an employer's justification unpersuasive or inconsistent, R&R's justification was clearly and consistently communicated to employees and supported by documentation and testimony. *Contra Breen v. Chao*, 253 F. Supp. 3d 244, 261 (D.D.C. 2017) (denying summary judgment because management's comments contradicted the company's asserted business motivation for the RIF); *see also Vahey v. Gen. Motors Co.*, 985 F. Supp. 2d 51, 63 (D.D.C. 2013) (finding a dispute of material fact because of inconsistent employment outcomes for similar employees and suspicious communications between managers about an individual's protected status).

R&R's subsequent conduct also reinforces its stated financial rationale. When business conditions improved, the company collaborated with the Union to recall laid-off employees. Nine Hispanic claimants were recalled for full-time or call-in roles. *See, e.g.*, Amaya Dep. at 107:22–108:2; Canales Dep. at 112:7–113:10, Ex. H to Def.'s Mot.; Gonzalez Dep. at 15:1–8; Guevara Dep. at 141:25–142:3. Others declined the offers for personal or employment-related reasons. *See* Maltez Dep. at 125:1–19, Ex. P to Def.'s Mot.; Sanchez Dep. at 97:1–21, Ex. R to Def.'s Mot. Courts have routinely held that financial hardship and budget constraints are valid, nondiscriminatory reasons for employment decisions. *See Dorns v. Geithner*, 692 F. Supp. 2d 119, 135–36 (D.D.C. 2010) (holding that budgetary issues were a "legitimate,

nondiscriminatory" explanation for an adverse employment action); *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 74 (D.D.C. 2009) (denying summary judgment because defendant had not presented a nondiscriminatory explanation for the conduct such as "the need to revise the terms . . . or budgetary constraints"). In line with this precedent, R&R has demonstrated a well-supported financial justification for its RIF and has complied with Title VII. But that is not the end of the inquiry. The Court must also examine the manner in which R&R conducted the RIF.

### b. RIF Layoff Process

In order to assess whether R&R conducted the RIF in a discriminatory manner notwithstanding a legitimate basis to conduct a RIF, the Court examines the process by which R&R implemented its April 2018 RIF and whether the EEOC has offered evidence suggesting that the stated reasons were pretextual. To begin, the Court recounts the key facts and events surrounding R&R's RIF process in order to determine whether a reasonable jury could find that R&R's stated justification was pretextual and that unlawful discrimination was the real motive behind its layoff decisions.

In April 2018, R&R implemented a RIF due to substantial cuts to its DOS contract. Def.'s SOF ¶¶ 48–49, 79; Pl.'s Opp'n to Def.'s SOF ¶¶ 48–49. The decision to conduct a layoff—and determine which and how many positions to eliminate—was made by Reyes and Westfall. *See* Reyes Dep. I at 175:18–176:6; Westfall Dep. at 29:19–31:15. R&R's DOS workforce included full-time day-shift, part-time night-shift, and call-in employees. *See* Reyes Dep. I at 181:9–182:1. Call-in workers, who had no assigned hours or roles, were excluded from consideration for the layoff. *See, e.g.*, Westfall Dep. at 164:17–20; Reyes Feb. 9, 2024 Dep. ("Reyes Dep. II") at 301:6–9, 303:8–12, Ex. AA to Pl.'s Opp'n.

To assist in employee selection, Westfall requested that Alston provide a list of employees ranked by seniority.  Alston verified this data but was not involved in the final layoff decisions.  *See* Westfall Dep. at 36:2–13; Alston Dep. at 165:18–171:17, 189:12–193:3.  Reyes and Westfall determined which positions to cut based on the revised work hours and staffing needs under the updated contract.  *See* Westfall Dep. at 30:10–31:10, 89:17–96:12, 162:5–164:20.

Employees were selected for layoff primarily based on low seniority.  However, those with security clearances were retained, as were two low-seniority night-shift employees—Boanerges Hernandez and Rodolfo Garcia—who had specialized equipment skills.  *See* Reyes Dep. I at 176:4–179:16; Westfall Dep. at 172:8–15, 181:2–184:22.  Separate layoff lists were created for day and night shifts.  *See* Reyes Dep. II at 294:1–298:16; Westfall Dep. at 171:15–172:15.

Throughout the process, Reyes and Westfall collaborated with the Union to confirm seniority and clearance data, revising the proposed layoff lists accordingly.  The Union did not raise any objections or file grievances alleging bias.  *See* Hackett Jan. 12, 2024 Dep. at 77:15–21, 87:6–88:16, 240:6–11, Ex. F to Def.'s Mot.  Although a group grievance was filed by several employees, the Union closed it after finding no violation of the CBA.  *See* Hackett Jan. 12, 2024 Dep. at 144:1–145:11; Pl.'s Opp'n to Def.'s SOF ¶ 76.

On April 27, 2018, R&R notified the affected employees that their employment was terminated effective immediately.  Each was issued a notice listing the reason for termination as "Government Cutback – Laid off."  *See, e.g.*, Canales Dep. at Ex. 36; Gonzalez Dep. at Ex. 1; Mendoza Dep. at Ex. 25, Ex. P to Def.'s Mot.  Many employees testified that they understood

the layoffs were the result of government-imposed budget cuts.  *See, e.g.*, Amaya Dep. at 31–32;

Canales Dep. at 97:9–98:2; Guevara Dep. at 117:18–21; Mendoza Dep. at 110:17–111:6.

Following the layoff, R&R offered affected employees part-time or call-in positions,

though all initially declined.  *See* Westfall Dep. at 198:18–201:9; Alston Dep. at 230:15–232:21.

When funding later improved, R&R worked with the Union to recall laid-off employees, and

nine Hispanic claimants were rehired.  *See, e.g.*, Reyes Dep. II at 264:2–19; Lopez Dep. at

136:1–20; B. Guardado Dep. at 101:17–104:15.  Some declined recall offers due to the limited

hours or nature of the work.  *See* Sanchez Dep. at 97:1–21.

### c.  R&R's Use of Seniority and Security Clearance in the RIF

Next, the Court must assess whether the EEOC has met its burden of establishing that the

manner in which the RIF was conducted was discriminatory.  Courts have long cautioned that

selection decisions in RIFs based on vague or inconsistently applied rationales—such as security

clearance status and seniority, when not clearly and uniformly enforced—may conceal

discriminatory intent and therefore merit close scrutiny.  *See Hamilton v. Geithner*, 666 F.3d

1344, 1352 (D.C. Cir. 2012) (recognizing that inconsistent application of criteria or post hoc

rationales may be indicative of pretext); s*ee also Davis*, 925 F.3d at 1252 ("What calls for

identification and scrutiny, and what plaintiffs challenge here, is not the [defendant]'s decision to

reduce its workforce, but the process the [defendant] used to select positions for the chopping

block.").  Against this backdrop and the supporting evidence presented by both parties, R&R's

asserted reliance on security clearance and seniority as determinative factors in its RIF raises a

genuine dispute of material fact sufficient to preclude summary judgment.

In particular, R&R's invocation of TS security clearance as an objective basis for

retaining less senior, non-Hispanic employees over more senior Hispanic janitors is undermined

by evidence in the record suggesting that the criterion was applied inconsistently. R&R asserts that employees with less seniority were retained only because they possessed TS clearances, *see* Def.'s Supp. at 16–17, but that rationale does not appear to have been uniformly applied. The Court refers to the case of Elsa Wasihun[5] to illustrate this point: as of April 27, 2018, she was a full-time general cleaner at the HST building who lacked TS clearance and had less seniority than many Hispanic janitors who were terminated during the RIF. *See* Reyes Dep. I, Ex. 23; Pl.'s SOF ¶¶ 82–83. Yet, she was not selected for termination.

While R&R argues that it mistakenly believed that Wasihun already had security clearance, *see* Def.'s Reply at 18 n.11, that explanation appears to be a post hoc rationale not supported by contemporaneous records and placed into question by testimony. Alston claimed that a group of employees, including Wasihun, asked for the status of their security clearances in April, a query which Alston passed on to Westfall and Reyes. Alston Dep. 185:9–186:6. Wasihun was known to have had issues securing her TS security clearance and was granted only "interim security clearance." *Id.* at 181:7–182:3. However, this level of security clearance did not justify exemption in the layoff process. *Id.* at 228:22–229:7. On April 12, 2018, Reyes stated in an email that the selection process would terminate employees "by seniority except for the people with TS clearance," clearly indicating that only individuals with existing TS clearance would be excepted. *See* Reyes Dep. I at 173:9–174:4, Ex. 19. Westfall's deposition confirms this understanding: when asked whether pending clearances were considered, he answered unequivocally, "[n]o, because . . . we got the letter from the government saying they weren't clearing nobody else." *See* Westfall Dep. at 156:9–21. When determining who to exempt from

---

[5] Elsa Wasihun is Ethiopian, *see* Reyes Dep. I, Ex. 21, and her seniority date was October 20, 2003, *see* Reyes Dep. I, Ex. 23.

the layoffs, Westfall and Reyes marked employees who had security clearance on a physical piece of paper which Reyes does "not remember" keeping. Reyes Dep. I at 177:19–178:14. Without this document or further testimony around it, there is a remaining question as to whether Wasihun was marked as having TS clearance then or after the fact. In light of the lack of additional clearances, the missing contemporaneous document that could substantiate the misunderstanding, and Alston's claims of communicating an inquiry about Wasihun's clearance to decisionmakers, the credibility of R&R's explanation for Wasihun's retention is legitimately in question, raising a genuine dispute of fact as to whether the proffered rationale was pretextual. *See Vasser*, 280 F. Supp. 3d at 20 (holding that inconsistency in an employer's behavior towards an employee's qualifications and job could suggest pretext sufficient to defeat summary judgment).

Moreover, the use of TS clearance as a selection criterion appears, at minimum, not to have been applied consistently or in strict accordance with contractual or operational requirements. The record indicates that TS clearance was not an absolute prerequisite for working at the HST building: many of the terminated janitors had worked there for years without it. *See* Pl.'s SOF ¶ 93. Further, some of these same janitors returned to work at the HST post-termination without having obtained TS clearance, suggesting that there is a possibility that the criterion may have been emphasized after the fact to justify earlier decisions. *Id.* These facts further support the inference that the stated rationale may not have been the actual reason for the termination decisions. *See Brady*, 520 F.3d at 495; *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147–48 (2000).[6]

---

[6] There may have been additional irregularities in the selection process. R&R's witnesses gave conflicting accounts about whether "call-in" janitors were considered for termination. Reyes testified that they were included, while Alston and Westfall said they were excluded,

Lastly, while Westfall's statements suggesting a discriminatory environment may not amount to direct evidence of discrimination, the Court concludes that they are sufficient to raise a genuine dispute of material fact regarding whether the stated reason for the RIF was merely a pretext.  Direct evidence requires a "direct connection" between the discriminatory remark and the employment decision, but courts have recognized that even in the absence of such a connection, discriminatory comments can raise an inference of bias when considered as circumstantial evidence.  *Sierra v. Hayden*, No. 16-cv-1804, 2019 WL 3802937, at *16 (D.D.C. Aug. 13, 2019) ("[D]iscrimination can exist even where there is not a 'direct connection' between disparaging comments and the alleged discrimination." (citation omitted)).  Here, Westfall, who was undisputedly involved in the RIF decision, made racially charged remarks shortly before the RIF.  At a December 2017 holiday party, he told a table of employees, including Hispanic managers, that "all amigos look alike to him" and joked that all Hispanic people are named José.  *See* Edwards Dep. at, 50:6–22; 24:1–3; Davis Dep. at, 26:21–28:14. These comments were corroborated by multiple witnesses and documented in an internal investigation.  *Id.*  A couple of months later, on February 8, 2018, Westfall forwarded an email likening immigrants to raccoons needing extermination, which he later trivialized by saying, "I just thought it was cute."  *See* Westfall Dep. at 300:17–303:6; Davis Dep. at 48:19–51:19; Exs. 37–38 to Pl.'s Opp'n.  Notably, Westfall did not deny making these statements when interviewed during the internal investigation, *see* Davis Dep. at, 87:11–88:16, and Reyes—who

---

albeit for inconsistent reasons.  *See* Pl.'s SOF ¶¶ 66–89 (Alston claimed that the call-in janitors quit before the list was sent out); *see also* Westfall Dep. at 132:16–21 (stating that call-in janitors were excluded from the list "because they weren't permanent employees").  The record further shows that six non-Hispanic call-in janitors were initially listed for termination but were removed from that list shortly before it was finalized, despite not having voluntarily resigned. Pl.'s SOF at ¶¶ 84–88.

was also part of the decision-making process—confirmed hearing them.  Courts have emphasized that, although it may not constitute direct evidence of discrimination, "evidence [of] . . . attitudes suggesting the decision maker harbors discriminatory animus" might support "an inference of discrimination."  *Holcomb*, 433 F.3d at 899 (citations omitted); *see also Alston v. Johnson*, 208 F. Supp. 3d 293, 301–02 (D.D.C. 2016) ("While courts are reluctant to infer discrimination based on stray remarks, discriminatory comments are much more likely to raise an inference of bias in employment decisions . . . where they are made by decisionmakers[.]" (internal quotation marks and citation omitted)); *Breen v. Chao*, 253 F. Supp. 3d 244, 258 (D.D.C. 2017) (holding that "[p]laintiff's best evidence demonstrating disparate treatment consists of defendants' widespread [discriminatory] comments").  Taken together, Westfall's comments—made close in time to the RIF and by a key decisionmaker—raise a sufficient inference of discriminatory animus in the RIF decision-making process.

Taken as a whole, the evidence—including inconsistent application of selection criteria, the retention of employees who did not meet stated requirements and conflicting explanations by decisionmakers raises a genuine dispute of material fact as to whether R&R's stated reasons for the terminations were pretext for discrimination.  *Johnson v. Perez,* 823 F.3d 701, 705 (D.C. Cir. 2016) ("Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact[.]'" (quoting Fed. R. Civ. P. 56(a)).  Accordingly, summary judgment must be denied.  *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 68–69 (D.D.C. 2006); *Barnett v. PA Consulting Group, Inc.*, 715 F.3d 354, 360–61 (D.C. Cir. 2013).

## VII. CONCLUSION

For the foregoing reasons, the Court **DENIES** R&R's Motion for Summary Judgment

(ECF No. 45) and **GRANTS** the EEOC's Motion for Leave to File a Sur-Reply (ECF No. 49).

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  August 20, 2025                                        RUDOLPH CONTRERAS
                                                                             United States District Judge